[No. 27744-1-II. Division Two. January 10, 2003.]

THE STATE OF WASHINGTON, *Respondent*, v. DYNAMITE SALAVEA, *Appellant*.

*Mary K. Young High*, for appellant.

*Gerald A. Horne, Prosecuting Attorney*, and *John M. Neeb, Deputy*, for respondent.

BRIDGEWATER, J. — Dynamite Salavea appeals his adult convictions for first degree child rape and first degree child

molestation. He complains that the State deprived him of due process and the benefits of juvenile court jurisdiction by not charging him until he reached 18. Although Salavea was 15 when he committed his crimes, the investigation did not conclude before he turned 16; thus, the automatic decline statute, RCW 13.04.030, was in effect. The earliest that the State could have charged Salavea was after he turned 16, and he committed his crimes after July 1, 1997. Thus, he could not avoid being tried as an adult. He was not denied due process. We affirm.

In August 1998, B.T. learned from a relative that Salavea, her nephew, had sodomized her sons, R.K.T. and R.U.T. B.T. telephoned R.U.T., who was visiting California; R.U.T. denied that Salavea had touched him and asked to speak with his brother. B.T. repeated her question several times before R.U.T. admitted that Salavea had victimized both him and R.K.T.

B.T. next contacted Jennifer Chavez, a close friend, told her that R.U.T. had been molested, and asked her to drive R.U.T. home from California. On the drive to Washington, Chavez and R.U.T. spoke several times about the incidents. B.T. also told Leah Hill, a woman who lived with her, that "her boys had been raped." 4 Report of Proceedings (RP) at 355. Hill asked R.K.T. several times if something was wrong before he mentioned incidents regarding Salavea. In October 1998, a child interviewer questioned R.U.T. and R.K.T.; both boys reported that Salavea had sexually abused them.

In October 2000, shortly after Salavea turned 18, the State charged him with four counts of first degree child rape and two counts of first degree child molestation. The State alleged that Salavea committed the offenses against R.K.T. and R.U.T., his cousins, between February 1996 and June 1998, when Salavea was between the ages of 13 and 15.

The relevant dates and events are as follows:

- 7/1/97 Salavea allegedly commits child rape after this date.

- 9/29/98 Pierce County Prosecutor's Office receives the investigative file.
- 10/9/98 Salavea turns 16.
- 10/30/98 An investigator interviews the two alleged victims.
- 11/2/98 An investigator interviews the victims' sister.
- 3/8/99 The State reviews Salavea's file for charging.
- 3/9/99 The State charges Salavea's then 14-year-old brother for the same conduct against the same victims.
- 4/99 Salavea leaves for Utah after violating his probation.
- 7/00 to 8/00 Salavea returns to Washington.
- 9/14/00 The State arrests Salavea for robbery in Tacoma, he provides false information.
- 10/9/00 Salavea turns 18.
- 10/25/00 The State charges Salavea as an adult.

Salavea moved to dismiss the charges, arguing that preaccusatorial delay violated his due process rights. The trial court denied the motion, finding that the delay was not unreasonable and did not unfairly prejudice Salavea.

The trial court also conducted a child hearsay hearing under RCW 9A.44.120, finding that the victims' hearsay statements were admissible. A jury found Salavea guilty as charged.

## I. Preaccusatorial Delay

██ Salavea argues that preaccusatorial delay denied him due process and the benefits of juvenile court jurisdiction. An intentional delay to avoid the juvenile justice system violates due process; a negligent delay may violate

due process.[1] Washington courts use a three-prong test to determine whether preaccusatorial delay violates due process: (1) the defendant must show prejudice from the delay; (2) the court must consider the reasons for the delay; and (3) if the State can justify the delay, the court balances the State's interest against the prejudice to the defendant.[2]

Salavea does not argue that the State should have charged him before he turned 16; rather, he contends the State should have charged him when it charged his brother, March 1999. Consequently, Salavea impliedly concedes that the investigative delay (between September 29, 1998, when the State received the file, and November 2, 1998, when the child interviews concluded) was neither improper nor unreasonable.[3] Thus, in analyzing the second prong, we hold that the record does not disclose any irregularity; therefore, the investigative delay was justified.

We hold that the delay did not unfairly prejudice Salavea because he turned 16 before the investigation concluded and the State charged him with first degree child rape. Therefore, the automatic decline statute, RCW 13.04.030, applied and Salavea would have been tried as an adult even if the State had charged him in March 1999. We do not need to analyze the other prongs as Salavea suffered no prejudice.

 Salavea argues that he must have committed the offense when he was 16 or 17 for the automatic decline statute to apply; but the statute does not support this argument. The automatic decline statute confers exclusive original jurisdiction on the adult division of superior court where:

> (v) The juvenile is sixteen or seventeen years old and the alleged offense is:
>
> . . . .

---

[1] *State v. Alvin*, 109 Wn.2d 602, 604, 746 P.2d 807 (1987).

[2] *State v. Dixon*, 114 Wn.2d 857, 860, 792 P.2d 137 (1990).

[3] *See, e.g., State v. Lidge*, 111 Wn.2d 845, 850, 765 P.2d 1292 (1989) ("[C]ourts generally conclude that investigative delays are justified.").

(C) . . . [R]ape of a child in the first degree . . . committed on or after July 1, 1997 . . . .[4]

The Supreme Court has held this statute to be unambiguous regarding RCW 13.04.030(1)(e)(iv). *In re Boot*, 130 Wn.-2d 553, 565, 925 P.2d 964 (1996). We also hold RCW 13.04.030(1) (e)(v) to be unambiguous.

*Boot* also held that " '[j]urisdiction over offenses committed by a juvenile is to be determined at the time proceedings are instituted against the offender.' "[5] For Salavea's argument to have merit the statute would have to be ambiguous and RCW 13.04.030(1)(e)(v) would have to specify that the offense must be committed when the juvenile was 16 or 17. But such is not the case.[6] Consequently, whether the State charged Salavea in late 1998, when the investigation concluded, or in March 1999, when the State charged Salavea's brother, the automatic decline statute would have applied, and Salavea would have been tried as an adult. Thus, the delay in charging Salavea did not deny him due process.

## II. Child Hearsay

Salavea also challenges the admission of the victims' statements to B.T., Jennifer Chavez, Leah Hill, and the child interviewer. Such statements are admissible when the child is under 10 years of age, is otherwise available to testify, and the court finds that the "time, content, and circumstances of the statement provide sufficient indicia of reliability . . . ."[7]

█ In determining the reliability of hearsay, courts weigh nine nonexclusive factors: (1) whether the declarant had an apparent motive to lie, (2) the declarant's general

---

[4] RCW 13.04.030(1)(e)(v).

[5] *Boot*, 130 Wn.2d at 575 (quoting *State v. Calderon*, 102 Wn.2d 348, 351-52, 684 P.2d 1293 (1984)).

[6] *See In re Marriage of Killman*, 264 Kan. 33, 955 P.2d 1228, 1234 (1998) (Courts "will not read [a plain] statute so as to add something not readily found in the statute.").

[7] RCW 9A.44.120.

character, (3) whether more than one person heard the statements, (4) the spontaneity of the statements, (5) the timing of the declaration and the relationship between the declarant and the witness, (6) whether the statements contain express assertions of past fact, (7) whether the declarant's lack of knowledge could be established by cross-examination, (8) the possibility of the declarant's recollection being faulty, and (9) whether the circumstances suggest that the declarant misrepresented the defendant's involvement.[8] The admissibility of child hearsay lies within the trial court's sound discretion, which this court will not reverse absent manifest abuse of discretion.[9]

Salavea challenges the spontaneity and timing of the statements, claiming that the statements were the product of suggestion, coaching, and reinforcement. But a review of the record shows that the trial court applied the correct analysis and did not err.

First, not every factor must be satisfied before a statement is admitted.[10] And by challenging only two factors, Salavea concedes that the other seven factors were satisfied. Second, the victims' statements to the interviewer satisfy the spontaneity factor; the interviewer used the victims' words and asked open-ended questions. Thus, even if the victims' statements to the other hearsay witnesses were neither spontaneous nor timely, they were merely cumulative of the interviewer's and the victims' testimony. Third, it is of little relevance that the victims did not make their statements until several months after Salavea's crimes. The victims claimed that Salavea threatened to harm them if they said anything. Finally, the relationships between the victims and the witnesses were strong, favoring admissibility. The trial court did not abuse its discretion in admitting the hearsay statements.

---

[8] *State v. Ryan*, 103 Wn.2d 165, 175-76, 691 P.2d 197 (1984).

[9] *State v. Tuoc Ba Pham*, 75 Wn. App. 626, 631, 879 P.2d 321 (1994), *review denied*, 126 Wn.2d 1002 (1995).

[10] *See State v. Justiniano*, 48 Wn. App. 572, 580, 740 P.2d 872 (1987) (child hearsay admitted even though disclosed only to child's mother).

Affirmed.

SEINFELD and ARMSTRONG, JJ., concur.

Review granted at 149 Wn.2d 1027 (2003).