**Ernest Lee SMITH, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–80–11.**

Court of Criminal Appeals of Oklahoma.

June 8, 1982.

David Luther Woodward, Sp. Counsel, Appellate Public Defender Project, Norman, for appellant.

Jan Eric Cartwright, Atty. Gen., Jimmy D. Givens, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

CORNISH, Judge:

Ernest Lee Smith was convicted of the crime of Assault and Battery with a Deadly Weapon in violation of 21 O.S.Supp.1977, § 652 in the LeFlore County Case No. CRF–79–40. Punishment was set at fifteen (15) years imprisonment.

On February 26, 1979, the appellant entered the home shared by his mother, Arvella Harris, and the victim, Fred Maxfield. The appellant attacked Mr. Maxfield with a pocket knife, slashing a two and one-half inch section of Maxfield's throat. The appellant was arrested by the police a short time later.

The appellant did not deny the act at trial, but rather relied on a defense of insanity. Dr. R. D. Garcia, Chief Forensic Psychiatrist at Eastern State Hospital, testified that the appellant had been treated at that facility periodically since 1966 for schizophrenia and sociopathic tendencies. It was Dr. Garcia's opinion that the appellant did not have the ability to distinguish right from wrong at the time the offense was committed. Family members of the appellant also testified that the appellant was behaving strangely prior to the altercation with Maxfield.

### I

The appellant contends that the trial court erred in failing to direct a verdict for him because of the State's failure to prove his sanity beyond a reasonable doubt. In the alternative, the appellant contends that jury instructions regarding insanity were inadequate and incomplete.

■ The State in a criminal prosecution may rely on a presumption that the defendant is sane. *Jones v. State*, 479 P.2d 591 (Okl.Cr.1971). However, when the defendant produces sufficient evidence to raise a reasonable doubt of his sanity, the State then has the burden of proving sanity beyond a reasonable doubt. *Garrett v. State*, 586 P.2d 754 (Okl.Cr.1978). Whether the State has carried its burden of proving the defendant's sanity at the time of the commission of the crime is a question of fact for the jury. *Maghe v. State*, 620 P.2d 433 (Okl.Cr.1980).

■ While it can be argued whether the testimony of Dr. Garcia was sufficient to raise a reasonable doubt about Smith's ability to determine right from wrong at the time he attacked Maxfield, there is sufficient support for the jury's finding that the State proved the appellant's sanity beyond a reasonable doubt. Evidence to support the jury's conclusion is found in the following:

1) The victim testified that he was able to stop the defendant's attack, at which time the defendant told him that he would leave if the victim would turn him loose.

2) The arresting officer testified that the defendant made an attempt to resist arrest.

3) A rebuttal witness testified that approximately six (6) months after the commission of the offense that the defendant stated that he would kill the victim.

4) The defendant's own testimony pertaining to the day of the offense.

In *Tarter v. State*, 359 P.2d 596 (Okl.Cr. 1961) in reviewing a similar factual situation, this Court ruled, "[t]heir verdict is not supported by the medical proof, but only by that of a few lay witnesses on the question of insanity at the time of the shooting. Nevertheless, it was within their province to believe the testimony of the lay witnesses to the disregard [sic] of the medical testimony, if they chose to do so. The law makes no distinction in weighing evidence between expert testimony and evidence of other character, and it is for the jury and not the reviewing court to determine the weight to be given such evidence (citations omitted)." *Tarter* supra at 600.

This court has consistently held that it will not interfere with the verdict of a jury on the grounds that the evidence was insufficient, unless there is no competent evidence in the record to support the verdict. There being competent evidence to support the finding of the jury, we find appellant's argument that the trial court erred in not directing a verdict to be without merit.

■ Appellant argues that jury instructions numbers 18 and 19 concerning the legal definition of insanity to be inadequate and incomplete. It should first be noted that the appellant did not offer his own instructions, which results in a waiver of any error in the instructions. *Moreau v. State*, 530 P.2d 1061 (Okl.Cr.1975). After carefully reviewing the instructions in their entirety, it is evident that the instructions fairly and correctly state the law as applicable in this case and are therefore sufficient.

II

As his second proposition of error, the appellant contends that the M'Naghten definition of insanity, as applied in Oklahoma is violative of the Fourteenth Amendment equal protection clause. Essentially appellant's argument is that the M'Naghten test is unconstitutional because it relieves from criminal liability only those mentally ill persons who have no cognative capacity while not recognizing types of mental illness which impair a person's ability to control his actions, i.e. irresistible impulses. Since we are not dealing with a suspect or semi-suspect classification or a classification involving fundamental rights, Oklahoma's insanity defense will be upheld if it is rationally related to a legitimate governmental interest.

■ The equal protection clause of the fourteenth amendment is designed to assure that those persons similarly situated with respect to a governmental action should be treated similarly. *Reynolds v. Sims*, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d

506 (1964). The equal protection clause does not bar all distinctions between classes of individuals subject to governmental action, but simply assures that the classification made is neither arbitrary or capricious, and that it bears a rational relationship to a legitimate governmental interest. *McGowan v. Maryland*, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). In order for the appellant to succeed with his challenge to Oklahoma's use of M'Naghten, he must initially prove that mentally ill persons who do not know right from wrong at the time of their action are similarly situated with those mentally ill persons who do not know right from wrong, but are unable to conform their actions to the requirements of the law.

Appellant has not met this burden. Medical science has not achieved that degree of sophistication and certainty in recognizing and defining mental illness. "Moreover, choice of a test of legal sanity involves not only scientific knowledge but questions of basic policy as to the extent to which that knowledge should determine criminal responsibility" *Leland v. Oregon*, 343 U.S. 790, 801, 72 S.Ct. 1002, 1008, 96 L.Ed. 1302, (1952). Allowing only those mentally ill persons who are unable to differentiate between right and wrong at the time of their act is a rationale embodiment of a basic premise of criminal law that one cannot be held criminally culpable if he does not appreciate the wrongful nature of his conduct. Since the classification present in 21 O.S.1981, § 152.4 embodies a reasonable policy determination made by the state legislature in an area fraught with scientific and medical uncertainties, the equal protection clause of the fourteenth amendment is not offended.

### III

As his final proposition of error, the appellant contends that the trial court erred in allowing Officer Hensley to testify in rebuttal regarding a conversation he had with the appellant. Hensley testified that while transporting the appellant from the state hospital to LeFlore County, the appel-

lant stated that he intended to kill the victim in the future. According to the appellant, the rebuttal testimony violated his protection under the sixth amendment and constituted prosecutorial overkill rising to the level of fundamental error. We find both assertions unsupportable. There is no evidence, and the appellant does not contend, that he had asserted his right to silence and that Hensley tricked him into making unwilling statements. The sixth amendment is not violated when an officer repeats statements voluntarily made by an accused. The statement made by the appellant was probative on the issue of the appellant's insanity at the time of the commission of the act and was properly admitted by the trial court.

The judgment and sentence of the trial court is hereby AFFIRMED.

BUSSEY, J., concurs.

BRETT, P. J., dissents.